UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RARIK ALLAN RASHID,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:16-02804 |
| ) | Judge Brown |
| ) | Jury Demand |
| **CITY OF NOLENSVILLE,** ) | |
| **TENNESSEE, ET AL,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM**

**I. INTRODUCTION
AND
BACKGROUND**

Plaintiff brought this action under 42 U.S.C. § 1983 on October 27, 2016 against the following defendants: 1) the Town of Nolensville (the Town, the Town of Nolensville, or Nolensville); 2) the Mayor of Nolensville, Jim Alexander (Mayor Alexander); 3) the Nolensville Police Department (NPD); 4) NPD Chief of Police, Troy Huffines (Chief Huffines). (Doc. 1, p. 1) Plaintiff alleges that defendants violated his Fourteenth Amendment right to due process, as well as his rights under the Tennessee Public Protection Act (TPPA), Tenn. Code Ann. § 50-1-304, and the Tennessee Public Employee Political Freedom Act (PEPFA), Tenn. Code Ann., 8-50-603. The facts set forth in the complaint (Doc. 1, § III, ¶¶ 12-41, pp. 3-7) are "accept[ed] as true" by defendants (Doc. 17, § II, p. 2), and are incorporated herein by reference, except as elaborated on below for ease of reference.

Plaintiff, a former NPD police officer, arrested two individuals for disorderly conduct in September 2015. However, Chief Huffines dismissed the warrants "without consultation," without plaintiff's knowledge, and without "any court proceeding." (Doc. 1, ¶¶ 13-14, pp. 3-4) Plaintiff filed a grievance against Chief Huffines, in response to which Chief Huffines suspended plaintiff

with pay for an indefinite period. (Doc. 1, ¶¶ 1, 12, 15-16, pp. 2-4) Plaintiff was permitted to return to full duty allegedly with the precondition that he "dismiss his grievance against . . . Chief Huffines . . . ." (Doc. 1, ¶ 21, p. 4)

After returning to full duty, plaintiff was dispatched on December 29, 2015 to "a call about a suspicious vehicle . . . [where] . . . a driver was sitting in a running vehicle possibly intoxicated." (Doc. 1, ¶ 24, p. 5) Plaintiff administered a field sobriety test, determined that the individual was intoxicated, handcuffed him, and instructed him to get into the patrol car. (Doc. 1, ¶¶ 25-27, p. 5) When the arrestee refused to comply with plaintiff's "verbal commands," plaintiff warned him that he would be tased if he did not comply. (Doc. 1, ¶ 28, p. 5) When the arrestee still refused to get into the patrol car, plaintiff "tased' him to force compliance, following which plaintiff transported him for processing. (Doc. 1, ¶¶ 28-29, pp. 5-6)

Nine days later, on January 6, 2016, plaintiff "received a letter of termination from . . . Chief [Huffines] and the [NPD]" allegedly "without a hearing or meeting with . . . Chief [Huffines] or any neutral person within [NPD] or the [Town] of Nolensville." (Doc. 1, ¶¶ 32-33, p. 6) Plaintiff "tendered a Notice of Appeal to the Mayor and . . . Chief [Huffines]" on January 8, 2016. (Doc. 1, ¶¶ 35-37, pp. 6-7) The Town of Nolensville allegedly "ignored" plaintiff's appeal because he had "not affect[ed] the notice properly." (Doc. 1, ¶ 36, p. 6) Thereafter, plaintiff "sent a letter to the members of the Board of Mayor and Alderm[e]n of Nolensville" on April 14, 2016 "making [a] formal request for a public name clearing hearing, and . . . request[ing] an appeal according to the policies and procedures set forth by the Board." (Doc. 1, ¶ 38, p. 7) His requests were denied. (Doc. 1, ¶¶ 39-40, p. 7)

On January 25, 2017, defendants filed a motion for summary judgment, the affidavits of Mayor Alexander and Sheriff Huffines, a memorandum in support of their motion for summary

2

judgement, a statement of undisputed material facts, and other case-related documents. (Docs. 13-18) Thereafter, plaintiff filed a response in opposition to defendants' motion for summary judgement, a response to defendants' statement of undisputed material facts, and a supporting memorandum of law. (Docs. 25-27) Defendants filed a reply on March 6, 2017. (Doc. 32) This matter is now properly before the court.

## II. STANDARD OF REVIEW

### A. Actions Brought Under 42 U.S.C. § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014) (citing *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010)). Plaintiff also "must establish that the defendant acted knowingly or intentionally to violate his . . . constitutional rights . . . mere negligence or recklessness is insufficient." *See Rainey v. Patton*, 534 Fed.Appx. 391, 393 (6th Cir. 2013)(quoting *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982)).

### B. Fourteenth Amendment

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law . . . ." *U.S. Const.* amend. XIV, § 1. Due process has a procedural component and a substantive one. *See Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir. 2012)(citation omitted). Unlike its substantive counterpart, "[p]rocedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property,' but deprivation of those interests without due process of law." *Handy-Clay*, 695 F.3d at 546 (citations omitted)). "At its core, procedural due process requires 'notice and an

3

opportunity to be heard at a meaningful time and in a meaningful manner.'" *Puckett v. Lexington-Fayette Urban County Government*, 833 F.3d 590, 606 (6th Cir. 2016)(citation omitted). To make a *prima facie* showing under § 1983 for a procedural due process violation, plaintiff must show that he: 1) had a life, liberty or property interest protected by the due process clause; 2) was deprived of his protected interest within the meaning of the due process clause; 3) was not afforded adequate procedural rights before being deprived of that protected interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio,* 610 F.3d 340, 349 (6th Cir. 2010)(citation omitted).

### C. Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384, 391 (6th Cir. 2017). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50; *Stiles ex. Rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine

4

issue of material fact, then summary judgment should be denied. However, "[t]he moving party need not support its motion with evidence; instead, it only must point out the deficiencies of the nonmoving party's case." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 507 (6th Cir. 2006)(citing *Celotex*, 477 U.S. at 324-25).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Jones v. City of Franklin, et al.*, __ Fed.Appx. __, 2017 WL 383383 * 2 (6th Cir. 2017)(quoting *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991)). "[T]o withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of h[is] pleadings or identify a 'metaphysical doubt' of hypothetical 'plausibility' based on a lack of evidence; [h]e is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009)(citing *Matsushita*, 475 U.S. at 586-87). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones*, 2017 WL 383383 * 2 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). To defeat summary judgment, the party opposing the motion must present affirmative evidence to support his position; a mere scintilla of evidence is insufficient. *See Brown v. Battle Creek Police Department*, 844 F.3d 556, 565 (6th Cir. 2016)(citation omitted).

### III. ANALYSIS

#### A. Defendant NPD

Defendants argue first that NPD is not a proper defendant in this § 1983 action. Defendants are correct. The law is firmly established that "persons" exposed to legal liability under § 1983

5

Case 3:16-cv-02804   Document 36   Filed 06/13/17   Page 5 of 19 PageID #: 283

include municipal corporations and other "bodies politic and corporate." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997), *cert. denied*, 522 U.S. 914 (1997)(citations omitted). However, sheriffs' offices and police departments are not bodies politic and, as such, are not persons within the meaning of § 1983. *See Petty v. County of Franklin, Ohio* 478 F.3d 341, 347 (6th Cir. 2007)(a sheriff's office is not a legal entity that can be sued under § 1983); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)(a police department "is not an entity which may be sued" under § 1983); *see also Harlan v. Bolton*, Slip Copy, 2017 WL 1373426 * 2 (M.D. Tenn, Apr. 17, 2017)("police departments are not proper parties to a § 1983 suit"); *Hull v. Davidson County Sheriff's Office*, Slip Copy, 2017 WL 1322104 * 2 (M.D. Tenn, Apr. 3, 2017)("police departments . . . are not proper parties to a § 1983 suit"). Because NPD is not a person amenable to suit under § 1983, plaintiff fails to state a claim on which relief may be granted.

### B. The Town of Nolensville and Mayor Alexander

Plaintiff alleges that the Town of Nolensville and Mayor Alexander violated his procedural due process rights by not following Town policies and procedures when they terminated his employment, denied his request to appeal, and denied his request for a public name-clearing hearing. Defendants argue that plaintiff did not have a property interest in his job as a Nolensville police officer because his job was an at-will position, and that he did not have a protected liberty interest in a name-clearing hearing.

#### 1. Whether Plaintiff Had a Property Interest in His Employment as a Nolensville Police Officer

"The law in Tennessee operates under a broad presumption that employees are at will and, by default, lack a property right in their continued employment." *Freeze v. City of Dechert, Tenn.*, 753 F.3d 661, 665 (6th Cir. 2014)(citing *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555

6

(Tenn. 1988)("The doctrine of employment at will has long been recognized in [Tennessee] with the concomitant right of either party to terminate such a relationship with or without cause.")(superseded by statute on other grounds as announced in *Bowman v. Benouttas*, __S.W.3d__, 2016 WL 4768922 (Tenn. Crim. App., Sept. 9, 2016)). Under Tennessee law, an "at-will employee 'is subject to dismissal at any time and without cause' and, thus, has no protected interest in h[is] continued employment." *Handy-Clay*, 695 F.3d at 547 (quoting *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997)(citing *Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990)("The long standing rule in this State is that an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all . . . .")). More particularly, "Tennessee law presumes that employment is at-will absent 'unequivocal language demonstrating the employer's intent' to enter into a contract changing the employment to a just-cause relationship." *Freeze*, 753 F.3d at 670 (quoting *Brown v. City of Niota*, 214 F.3d 718, 721 (6th Cir. 2000)). "An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause." *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994)).

Plaintiff argues that Nolensville "disciplinary process and appeal process create[d] an expectation of continuing employment." (Doc. 27, pp. 6-7) Defendants rely on the following excerpts from relevant Town documents to show that plaintiff had no such right.

> The Mayor may "[e]mploy . . . and discharge all employees and department heads, in accordance with personnel policies and procedures, if any . . . .
>
> "**Nothing in this Charter shall be construed as granting a property interest to employees or department heads in their continued employment** . . . .

Municipal Charter, § 6-3-106(2)(A)-(B)(emphasis added). (Doc. 17, p. 5)

7

> **Nothing in this document is to be interpreted as giving an employee any more property rights in their jobs than may already be given by the Town Charter** . . . .
>
> The Mayor may discipline or dismiss an employee . . . .
>
> Any misconduct while acting on behalf of the municipal government and in the judgment of the Mayor that brings adverse publicity or discredit upon the municipality may be regarded as grounds for dismissal . . . .
>
> **These personnel policies are believed to be written within the framework of the Charter but in case of conflict the Charter takes precedence. Nothing in this document is interpreted as giving an employee any more property rights in their jobs than may already be given by the Town charter**. . . .
>
> Any town employee . . . dismissed may submit a request in writing to the Mayor, asking [him] to review the action. An employee must submit the request for an appeal within three (3) calendar days of receiving notification of the disciplinary action and must also state his/her intent to have representation and to name the representatives. The Mayor, shall schedule a hearing within ten (10) days of receiving the employee's request for appeal. . . .

Personnel Rules, §§ I and VI (emphasis added). (Doc. 17, pp. 6-7) The foregoing excerpts are based on Mayor Alexander's sworn affidavit (Doc. 15, pp. 2-3) as set forth both in defendants' memorandum in support for their motion for summary judgment (Doc. 17, pp. 5-7) and statement of undisputed material facts (Doc. 18, ¶¶ 25, 27, pp. 7, 9).

Defendants draw the following legal conclusions in their statement of undisputed material facts from the excerpts quoted above:

> "There is no provision in the Town's Charter, Municipal Code or Personnel Regulations which provide that an employee of the Town may only be discharged for cause a[s] all employees of the Town are employees at will . . . ."
>
> "The Town of Nolensville Charter provide[s] that an employee may be discharged in accordance with personnel policies and rules and

8

> states 'Nothing in this charter shall be construed as granting a property interest to employees or department heads in their continued employment . . . ."
>
> "The Personnel Rules of the Town do not provide any required cause or grounds for the discharge of an employee and state 'Nothing in this document is to be interpreted as giving an employee any more property rights in their jobs than may already be given by the town charter . . . ."

(Doc. 18, ¶¶ 28-30, pp. 10-11) Plaintiff does not dispute the excerpts above at pp. 7-8 in his response to defendants' statement of undisputed material facts. (Doc. 26, ¶¶ 25-27, pp. 8-10) He does, however, dispute defendants' legal conclusions above.[1] (Doc. 26, ¶¶ 29-31, pp. 11-13)

In his response to defendants' motion for summary judgment, plaintiff first cites to *State v. City of Memphis*, 452 S.W.2d 346 (Tenn. 1970) in support of his argument that he had a property interest in his job as a Nolensville police officer. (Doc. 27, p. 5) Unlike the plaintiff in *State v. City of Memphis*, plaintiff was not a probationary employee at the time he was discharged. Neither has plaintiff alleged and shown that Nolensville's employees were covered by a civil service system as were the plaintiffs in *State v. City of Memphis*, a system to which the Tennessee Supreme Court referred as "the Civil Service Law of the City." *City of Memphis*, 452 S.W.2d at 347. *State v. City of Memphis* is inapposite to the facts of this case.

Plaintiff cites next to *Huddleston v. City of Murfreesboro*, 635 S.W.2d 694 (Tenn.

---

[1] That plaintiff disputes defendants' conclusions implies that the Town's Charter, Municipal Code or Personnel Regulations do provide that employees such as plaintiff were not at-will employees and could be discharged only for good cause, that the Town's charter does grant a property interest in the continued employment of its employees, and that the Town's Personnel Rules do require cause or grounds to discharge an employee.
  Defendants have presented substantial evidence from the Town's Charter, Municipal Code and Personnel Regulations – evidence that plaintiff does not dispute – that establishes plaintiff was an at-will employee, that cause was not required to terminate his employment, and that he did not have a property interest in his employment. If plaintiff had evidence to the contrary, then this was the time for him to present it. He did not. As previously noted above at p. 5, "[o]nce the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint."

9

1982)(superseded by statute on other grounds as stated in *Tidwell v. City of Memphis*, 193 S.W.3d 555 (Tenn. 2006)) in support of his argument that an "employee has a proprietary interest in public employment where the city charter provides that any person removed from office or dismissed from employment . . . can appeal to the City Council and is entitled to a hearing as to the reasons or justifications for his removal or discharge." (Doc. 27, p. 5) However, the Sixth Circuit has since held that *Huddleston* is "inapposite" when there is no "statute, ordnance or specific employment contract creating [a proprietary] interest." *See Keller v. City of Cleveland, Tennessee, et al.*, 2014 WL 2809662 (E.D. Tenn. 2014)(quoting *Duncan v. City of Oneida, Tenn.*, 735 F.2d 998, 1001 (6th Cir. 1984)). Plaintiff has not alleged and shown that any Town "statute, ordnance or specific employment contract" created a proprietary interest in his employment. On the contrary, notwithstanding any right the Personnel Rules may have created in an appeal process, the Town Charter provides – unambiguously – that plaintiff had no property interest in his continued employment, and the Personnel Rules provide that the Town Charter trumps where there is a conflict between the two. More particularly, there is no "unequivocal language demonstrating the employer's intent' to enter into a contract changing the employment to a just-cause relationship" as required under *Brown*, cited above at p. 7, which was decided well after *Huddleston*.

Finally, plaintiff again invokes *Brown*, cited above at p. 7. As previously noted, *Brown* stands for the proposition that, under Tennessee law, there must exist "unequivocal language demonstrating the employer's intent' to enter into a contract changing the employment to a just-cause relationship." Plaintiff does not allege and show that such a language appears in the Town documents governing this issue. Once again, the Town Charter is unequivocal: "Nothing in this Charter shall be construed as granting a property interest to employees . . . in their continued employment" and, as already noted, the Town Personnel Rules provide that, in the case of a conflict

10

between the Town Rules and the Town Charter, "the Charter takes precedence."

Plaintiff has failed to establish that he had a property interest in his employment as Nolensville police officer. Consequently, plaintiff fails to state a property-interest claim under the Fourteenth Amendment on which relief may be granted.

### 2. Whether Plaintiff Had a Liberty Interest In a Name-Clearing Hearing

Plaintiff argues that his liberty interests were violated when he was denied a name-clearing hearing after his employment was terminated. He asserts that he is able to establish each of the five element described below at pp. 12-13. Plaintiff's basic arguments are as follows: 1) the force he applied that led to his termination was not excessive in "today's climate of relations between citizens and police department," and the characterizations of his actions as excessive force "could be considered 'stigmatizing statements'"; 2) Chief Huffines' January 6, 2016 letter to him "contains false information"; 3) the "stigmatizing allegation of excessive force has had an effect on his liberty interest" because, when he "made application to several law enforcement agencies, those agencies . . . made inquiry into [his] POST certification as required by law";[2] 4) "[i]t is expected that an employer, prior to making a new hire, will contact an applicant's former employer history," that "the Town disclosed the alleged reasons for his discharge," and that the disclosure of information to a sate commission and possibly to a prospective employer . . . is a public dissemination of information." (Doc. 27, pp. 11-13) Defendants argue that plaintiff has failed to show that the reason given for plaintiffs discharge was stigmatizing, or that they made a voluntary dissemination of false information. (Doc. 17, pp. 15-16)

---

[2] The Tennessee Peace Officer Standards and Training Commission (POST), Tenn. Comp. R. & Regs, § 1110.-02-.04, provides that "Law enforcement agencies . . . discharging certified law enforcement officers for disciplinary reasons . . . shall inform the Commission within ten (10) days. . . ."

11

A liberty interest exists "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Greer v. Detroit Public Schools*, 507 Fed.Appx. 567, 573 (6th Cir. 2012)(quoting *The Board of Regents of State Colleges, et al., v. Roth*, 408 U.S. 564, 573 (1972)). However, injury to reputation alone is not sufficient to create a constitutionally protected liberty interest. "Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation." *Quinn*, 293 F.3d 315, 319 (6th Cir. 2001)(quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)(announcing the "stigma-plus" test)). Plaintiff must demonstrate a stigmatizing government action "so negatively affect[ed] his . . . reputation that it effectively foreclose[d] the opportunity to practice a chosen profession." *See Greer*, 507 Fed.Appx. at 573 (citation omitted). In such a case, due process requires that the affected person be given the opportunity to respond to the government's charges through a "name-clearing hearing." *Quinn*, 293 F.3d at 320 (citation omitted).

Plaintiff must make a five-part *prima facie* showing to prevail on a Fourteenth Amendment liberty-interest claim. *Quinn*, 293 F.3d at 320. First, stigmatizing statements must be made in conjunction with plaintiff's termination. Second, the statements must be more than mere allegations of improper or inadequate performance, incompetence, neglect of duty, or malfeasance. *Quinn*, 293 F.3d at 320 (citing *Brown*, 214 F.3d at 722-23). The statements must be "so charged with moral stigma such as immorality or dishonesty" that they foreclose the plaintiff from seeking alternative employment. *See Barr v. Jefferson Cnty. Bd. Of Educ.*, 311 Fed.Appx. 817, 826 (6th Cir. 2009)(quoting *Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404, 410 (6th Cir. 1997)). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Doe v. Michigan Dept. Of State Police*, 490 F.3d 491, 499 (6th Cir. 2007)(quoting *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th

12

Cir. 1999)). Third, the statements must be made public. Fourth, Plaintiff must claim that the charges made against him were false. Fifth, public dissemination must have been voluntary. *Quinn*, 293 F.3d at 320 (citing *Brown*, 214 F.3d at 722-23). Plaintiff must show the existence of all five factors to establish that the circumstances of his termination deprived him of a liberty interest. *Quinn*, 293 F.3d at 320.

Plaintiff does not allege, nor can it be determined from the record, that Chief Huffines' January 6, 2016 memorandum terminating plaintiff (Doc. 16, Ex. 1) was disclosed to anyone other than plaintiff himself, the copy to Robert J. Notestine, III, the Nolensville Town Attorney[3] (Doc. 16, Ex. 1, p. 2 of 2) who had a need to know, and apparently on February 19, 2016 to Jacques H. Cabell, plaintiff's attorney in the instant action and in the matter below (Doc. 25, Ex. 12, p. 1).[4] For his part, Chief Huffines declared that, although he placed a copy of the memorandum in plaintiff's personnel file, he "made no communication[] or publication of the Memorandum or reasons" for plaintiff's termination to "anyone outside the Town of Nolensville, except to the Peace Officers Standards and Training Commission . . . ."[5] (Doc. 16, ¶¶ 4-5, pp. 1-2) Although plaintiff disputes Chief Huffines' assertion in his response to defendants statement of undisputed material facts, *i.e.*, that Chief Huffines did not communicate or publish the reasons for plaintiff's termination, plaintiff offers no evidence that he did, asserting only that his inability to obtain employment in law enforcement was "likely" due to the public disclosure of the reasons for his termination (Doc. 26, ¶ 22, pp. 6-7).

---

[3] Mr. Notestine had been the Town's Attorney since 1996 at the time of the alleged events that gave rise to this action. *See* http://nolensvilletn.gov/attorney.

[4] The undersigned assumes without deciding that the memorandum was provided to Mr. Cabell as part of the unspecified "compiled documents [attorney Cabell] requested" from the Town Attorney. (Doc. 25, Ex. 12)

[5] Chief Huffines filed a POST Change of Status form (POST report) advising the Commission that plaintiff had been terminated on January 6, 2016. (Doc. 16-2, Ex. 2) The reason given in the POST report for plaintiff's termination was "Excessive Force." (Doc. 16, Ex. 2) As previously noted above at p. 11, n. 2, advising the Commission of plaintiff's termination was required under Tennessee law.

13

The Memorandum at issue reflects the following three findings from the internal review of plaintiff's actions on the night of December 29, 2015: 1) plaintiff's "actions were found to be outside of policy" because "the arrestee was not being physically combative while handcuffed" in violation of General Order 52.4.H; 2) plaintiff "failed to immediately notify a supervisor as [required] in General Order 5.4.3.D.2 . . . . after deploying the taser . . . ."; 3) plaintiff "failed to have medical personnel check the arrestee after the use of the Taser X26 . . . ." (Doc. 16-1, Ex. 1) Notwithstanding the foregoing findings, the sole reason for plaintiff's termination in the POST report was "Excessive Force." (Doc. 16, Ex. 2) None of the other findings from the internal review were cited as grounds for plaintiff's termination.

**Stigmatizing effect**. Neither the findings of the internal review of plaintiff's actions in the memorandum, nor the reason for plaintiff's termination noted in the POST report, are "charged" with "moral stigma such as immorality or dishonesty."[6] At worst they allege inadequate performance, incompetence, or malfeasance, none of which are considered to be stigmatizing in the context of plaintiff's liberty-interest claim. They are charges that merely made plaintiff less attractive to other employers. In short, the memorandum and POST report fail to satisfy either the first or second part of the five-part test set forth above.

**Public disclosure.** Plaintiff asserts he alleged in his complaint that "the Town disclosed the alleged reasons for his discharge," the inference being that the Town made public the reasons for his discharge. (Doc. 27, p. 12) As previously noted above at p. 5, plaintiff may not simply rely on the pleadings in responding to a motion for summary judgment; he must provide argument and

---

[6] Citing *Quinn*, 293 F.3d at 320, plaintiff asserts that "[a]n allegation of excessive force against a police officer is more than just merely improper or inadequate performance, incompetence, or neglect of duty or malfeasance." (Doc. 27, p. 12) Plaintiff in *Quinn* worked for the Cincinnati Metropolitan Sewer District. Although the undersigned appreciates counsel's creativity, it is difficult to imagine circumstances where the Director of the Metropolitan Sewer District would stand accused of using excessive force.

evidence to withstand a motion. Plaintiff has failed to provide any evidence that the reasons for his discharge were made public. In any event, notwithstanding his assertion to the contrary, plaintiff did not allege in his complaint that "the Town disclosed the alleged reasons for his discharge." (Docs. 1 and 27, p. 12) Moreover, the disclosures discussed above at p. 13, *i.e.*, the memorandum to plaintiff, the copy to the Town Attorney, the copy to plaintiff's counsel, the POST report, and the copy of the memorandum filed in plaintiff's personnel file scarcely constitute public disclosure within the meaning of the third part of the five-part test. For the reasons stated above, plaintiff fails to satisfy the third element of the five-part test.

**Truthfulness of the information.** Plaintiff asserts that "the finding and statement through Chief Huffines' [memorandum] is not founded on the Town's and Police Department's policy addressing force and the use of force (e.g., Taser ) and are therefore false." (Doc. 27, p. 11) Plaintiff argues that he "could show that his use of the Taser was within the Town[']s use and escalation of force policy," and that he "could also establish that how he deployed his Taser was also within policy and that this deployment was mis-characterized." (Doc. 27, pp. 11-12) Defendants' motion for summary judgment is before the court. As the undersigned has stated previously, if plaintiff had evidence to support his argument that his actions were consistent with NPD policies, then this was the time to present it. Once again, he did not.

Notwithstanding plaintiff's failure to provide any evidence, published NPD policies provide that the Advanced Taser X-26 may be used to control:

> a dangerous, violent, combative, fleeing or actively resisting subject when deadly force does not appear to be justified and/or necessary; or attempts to subdue the subject by other tactics have been, or will likely be, ineffective or inappropriate to the situation at hand; or there is reasonable expectation that it will be unsafe for officers to approach within range of the subject.

(Doc. 25, Ex. 7, § 5.4.2, p. 1) As previously established above at p. 2, plaintiff performed a field

15

sobriety test on the arrestee and handcuffed him, both apparently without incident, after which the arrestee merely refused to obey verbal commands to get in the back seat of the patrol car. Under these circumstances, the arrestee's refusal to comply with plaintiff's verbal commands constituted "passive resistance" rather than "active resistance" as set forth in NPD's "Use of Force" policy, NPD General Order #5.1. (Doc. 25, Ex. 6, §§ 5.1.4.C, Q, pp. 3-4) In short, the evidence before the court shows that plaintiff's use of the taser under the circumstances described on December 29, 2015 violated published NPD policies. Those same policies provided that the "**[i]ntentional misuse of the authority under this policy is grounds for disciplinary up to and including termination**." (Doc. 25, Ex. 6, § 5.1.2, p. 1)(emphasis in the policy)

For the reasons explained above, plaintiff has failed to satisfy the fourth element of the five-part test described above at pp. 12-13.

**Voluntariness of the information**. As previously noted above at p. 11 n. 2, the POST report was required under Tennessee law. Where, as here, the reason for an employee's termination is disseminated by requirement of law, the Sixth Circuit has held that defendants cannot be said to have disseminated the information voluntarily. *Kendall v. Bd. of Educ.*, 627 F.2d 1, 6 (6th Cir. 1980)(overruled on other grounds by *Duchesne v. Williams*, 849 F.2d 1004 (6th Cir. 1988)(*cert. denied*, 489 U.S. 1081 (1989)). Because Chief Huffines' POST report was required under the law, the information in it was not disseminated voluntarily. Consequently, plaintiff fails to satisfy the fifth part of the five-part test needed to establish that he was deprived of a liberty interest.

As shown above, plaintiff has failed to establish any of the elements of the five-part test necessary to establish a *prima facie* case that he was deprived of a liberty interest. Consequently, he fails to state a claim on which relief may be granted.

### C. Chief Huffines

16

Plaintiff alleges that Chief Huffines violated his rights when he suspended plaintiff "for an indefinite period" in September 2015 following plaintiff's arrest of two individuals for disorderly conduct. Plaintiff also alleges that his rights were violated when he was denied the opportunity to pursue his grievance against Chief Huffines in that instance. Defendants argue that plaintiff's suspension claim is without merit because Chief Huffines placed plaintiff on administrative leave with pay, and that his grievance claim is time barred.

As previously established above at p. 2, plaintiff was suspended with pay. Suspension with pay does not constitute the deprivation of a protected property interest. *See Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Because plaintiff's 8-day suspension was with pay, and because plaintiff does not allege and show that he lost any other benefits during his suspension, Chief Huffines' actions did not deprive plaintiff of a property interest and, as such, plaintiff fails to state a claim on which relief may be granted with respect to his suspension.

Turning to defendant's timeliness claim, as explained below, plaintiff's suspension and grievance claims are both time barred. Federal courts apply the state personal injury statute of limitations in actions brought under § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985)(superseded by statute on other grounds as recognized in *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 379-380 (2004)); *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The statute of limitations for personal injury arising in Tennessee and brought under federal civil rights statutes is one year. Tenn. Code Ann. § 28-3-104(a)(3) (2004); *see Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Dellis v. Corrs. Corp. Of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The statute of limitations begins to run when "'the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kovacic v. Cuyahoga Cnty. Dep't of*

17

*Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010)(quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir.1997)). This inquiry is objective and the court looks "to what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635; *see also Hughes v. Vanderbilt University*, 215 F.3d 543, 548 (6th Cir. 2000)(emphasis added). The statute of limitations is tolled for the period of time during which the plaintiff was exhausting his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012)(citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)).

The record shows that Chief Huffines placed plaintiff on "paid administrative leave" on September 3, 2015. (Doc. 16, Ex. 4) The record also shows that plaintiff returned to full duty status on September 11, 2015, allegedly on the condition that he dismiss his grievance against Chief Huffines, a precondition that plaintiff does not dispute or with which he declined to comply. (Doc. 1, ¶ 21, p. 4)

Plaintiff does not dispute that he was placed on "paid administrative leave" on September 3, 2015. Therefore, September 3, 2015 is the date on which the one-year limitations period began to run on plaintiff's 2015 suspension claim – unless the limitations period was tolled because plaintiff was pursuing his administrative remedies, which the record shows he did by filing a grievance against Chief Huffines. However, the record also shows that plaintiff returned to full duty on September 11, 2015 on the condition that he drop his grievance against Chief Huffines. Inasmuch as plaintiff returned to full duty on September 11, 2015 with the precondition that he drop his grievance against Chief Huffines, the undersigned concludes that plaintiff did not pursue his administrative remedies beyond that date. Consequently, the one-year limitations period began to run not later than September 11, 2015 with respect to both his suspension and his grievance.

Plaintiff filed this action in district court on October 27, 2016, one year, one month, and

18

sixteen days after he had returned to full duty, *i.e.*, after he was no longer suspended and had ceased to pursue his grievance. Because plaintiff raised both of these claims in federal court 47 days after the one year limitations period had run, both claims are time barred.

### D. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. As shown above, plaintiff either fails to state a claim on which relief may be granted as to any of the defendants, or his claims are time-barred. Consequently, it is not necessary to address defendants' qualified immunity argument.

### E. The TPPA and the PEPFA

Plaintiff has failed to state an actionable federal claim under § 1983. Therefore, the district court will not exercise is supplemental jurisdiction in this case. Instead, the court will dismiss these two state law claims without prejudice to whatever relief plaintiff may be entitled in state court under the TPPA and PEPFA.

An appropriate order will enter.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge